

FILED
SEP 2 2 2014
CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| JEFF BARTH personally and in his capacity as sitting County Commissioner for the COUNTY OF MINNEHAHA, SOUTH DAKOTA, and all others similarly situated,<br><br>    Petitioners,<br><br>v.<br><br>MARION M. "MIKE" ROUNDS, JEFFREY T. SVEEN, ROBERT "TAD" PERRY,<br><br>    Respondents. | Case No.: 14-MC-118<br><br>**PRE-COMPLAINT PETITION TO PRESERVE EVIDENCE** |

*The Respondents will be sued for, or have direct knowledge of, among others, allegations of fraud & conversion regarding the operation and oversight of the South Dakota Regional Center, previously known as the South Dakota International Business Institute/Dairy (SDIBI) Economic Development Region, an approved and designated Regional Center recognized by the U.S. Department of Homeland Security, U.S. Citizenship and Immigration Service in accordance with the Immigrant Investor Pilot Program pursuant to section 203(b)(5) of the Immigration and Nationality Act, as amended, and the Departments of Commerce, Justice and State, the Judiciary, and Related Agencies Appropriations Act of 1993, Pub. L. No. 102-*

*395, section 610 as amended, and all applicable regulations promulgated there under, including 8CFR section 204.6.*

*We will allege respondents knew of, should have known of, or directly engaged in the implementation of manipulative devices to;*

  a) *convert the management and operational control of a State owned and operated entity, to a private entity,*

  b) *Fraudulently steered immigrant investors into projects that were not viable, for an initial investment $500,000 dollars with additional one time fees of at least $85,000 dollars and ongoing annual fees of $10,000 dollars and an additional 1 percent ownership stake in the projects these immigrant investors invested in, resulting in these immigrant investors in many cases, especially Northern Beef Packers in Aberdeen, South Dakota being deprived both of their investment and of their visa.*

  c) *Failed to ensure that the tens of millions of dollars in fees harvested by the fraudulent conversion of the management of the South Dakota Regional Center were remitted to their rightful owners – the taxpayers and citizens of the State of South Dakota.*

  d) *Some Respondents did personally reap the pecuniary rewards of this illicit financial fraud & scheme, among other facts and allegations we will be pleading.*

*It is about a not-yet-cognizable complaint that will allege a pattern and course of conduct so outrageous, so unscrupulous and so conniving– that it boggles the reasonable mind.*

> *Respondents (Either directly, or indirectly) extolled, marketed and advertised to foreign nationals, the ease of obtaining entrance into America for an initial fee of over $600,000 per person. Over 800 people, mostly from Asia, paid that fee.*
>
> *Potentially hundreds of millions of dollars in money – potentially stolen money - are at stake. We will allege this fraudulent scheme and course of business resulted in losses to, among others, the petitioners, state of South Dakota, its tax payers, the investors, and others similarly situated, in staggering amounts. For the last 5 years, no one has done anything to stop it, However;*

COMES NOW, the Petitioners, and hereby files their Pre-Complaint Petition to Preserve Evidence pursuant to Federal Rule of Civil Procedure 27(a)(1). The Petitioners herein move this Court for entry of an order directing the Respondents to preserve physical evidence and preserve related material regarding the South Dakota Regional Center, previously known as the South Dakota International Business Institute/Dairy Economic Development Region (SDIBI/DEDR) herein after referred to as "The File" that includes the conversion contract between the South Dakota International Business Institute and the for-profit company SDRC, Inc. dated January 15, 2008. (A further definition of "The File" is Exhibit A to attached Declaration of Richard Engels)

Petitioners do require adequate assurance that relevant information is not being destroyed, as credible claims have been stated that some Respondents have shredded documents. (Exhibit C at ¶ 7 in attached Declaration of Richard Engels). One example known today, is one of the Respondents stole public documents from Northern State University when he ended his

public employment as Director of the South Dakota International Business Institute. (Exhibit H at ¶ 12 in attached Declaration of Richard Engels).

This Court can take possession of The File too, regardless of whether or not Petitioners eventually get to see such information, the Court itself, may need to examine it. United States v. Reynolds, 345 U.S. 1. 10 (1953); 50 U.S.C. § 1806(f).

Petitioners, in the absence of Court possession of all The File(s) from Respondents, therefore, will seek a modest initial agreement, asking Respondents to acknowledge that they will abide by their duty to preserve what they know, or reasonably should know, will be relevant evidence in this pending lawsuit.

In support of this Petition, Petitioners provide the following memorandum of law, and the accompanying declaration of Counsel, Richard Engels which respectfully shows this Honorable Court the following:

### I. PETITIONERS' MOTION TO PRESERVE EVIDENCE

Petitioners plan to file a cognizable claim but cannot presently do so (Richard Engels Decl. at ¶ 4, 5 & 5(a)), because, among other factors, The File is not in Petitioners care, custody or control.

### II. JURISDICTION AND VENUE

Jurisdiction and venue are proper in this Court, because The File(s) are/ is believed to be located in, and the parties are all within this Jurisdiction. The amount in controversy meets the definition of this Court.

## III. PARTIES

**Petitioner, Jeff Barth** personally and in his capacity as sitting County Commissioner for the COUNTY OF MINNEHAHA, SOUTH DAKOTA, at all times relevant, has been a resident of the State.

Several other entities and persons, who may have been or are currently being affected are considering joining this contemplated action.

> **Witness, Joop Bollen** is a private citizen, who resides in this Jurisdiction. Specifically, Petitioners are seeking the known data from The File: Mr. Bollen lives in Aberdeen, South Dakota. After establishing himself as a local he was hired (Approx.1994) by Clyde Arnold, a business professor (and Dean) at Northern State University, to run the South Dakota International Business Institute (SDIBI,) which *was* governed by the State Board of Regents. On April 8, 2004 the SDIBI was put in charge of the state run Regional Center, the SDIBI/DEDR. By 2006 the United States Citizenship and Immigration Service (USCIS) approves SDIBI/DEDR the regional center for directing foreign investments into Beef Processing and Packing plants, among other projects, in South Dakota.
> Mr. Bollen quickly saw the potential for a huge capital venture with the SDIBI/DEDR, assisting foreign nationals wanting to obtain visas in the U.S. for investing their foreign dollars in jobs in South Dakota. Mr. Bollen, decided there is bigger money to be made for himself and his associates if the facilitating and managing agency were private instead of public. On January 3rd, 2008 Mr. Bollen files Articles of Incorporation for (private) "SDRC Inc." (Richard Engels Decl. at ¶ 8, Exhibit D) This is while he is STILL the director of (public) SDIBI. Mr. Bollen, as director of SDIBI, approves SDRC Inc. to handle all EB5 work, *signing a contract (memorandum of understanding) with, in effect, himself,* to take from the state of South Dakota, the bulk of future administrating and loan processing fees generated by the EB5 program – leaving the State a de minimis amount. He did this with apparent knowledge of, a) former Board of Regents President **Harvey Jewett (current member of the Board of Regents)**, b) former Executive. Director of the Board of Regents, and CEO of the South Dakota Public University System, Robert **(Tad Perry)**, c) and current Board of Regents **General Counsel James Shekleton**. Someone had to authorize this one person negotiation though everyone claims ignorance of the January 15, 2008 Memorandum of Understanding (MOU) (Richard Engels Ex. At Exhibit B**)**.

Also seemingly privy (how could he NOT be) to all details of this fundamental shift is then-Governor **Mike Rounds**, who recently admitted when questioned by a reporter, "We knew there had to be a way in place to fund the operation. We understood that," (Richard Engels Dec. Exhibit. E at ¶ 9).

Mr. Bollen signs the new contract representing SDIBI, and has his business partner (and lawyer with Hanul Law Corporation) **James Park** sign on behalf of SDRC Inc. Overseeing the documentation and representing SDRC Inc. is Siegel Barnett & Schutz Partner, **Jeff Sveen, a law partner of Board of Regents former President Harvey Jewett**.

Mr. Bollen did funnel his energies to his own firm, SDRC Inc, while pretending to do work for, and collecting a paycheck from SDIBI, until Dec. 21, 2009, (in direct violation of Board of Regents fraud and conflict of interest policies (Dec. of Richard Engels Ex. At ¶10)) when Mr. Bollen resigns as Director of SDIBI. On Dec. 22, 2009 – THE NEXT DAY – The Governor, **Mike Rounds,** awards the NO-BID EB5 Program contract to SDRC Inc. This contract was signed on behalf of the state by Director of Tourism & State Development, Richard Benda.

To summarize: SDIBI (Mr. Bollen directed) and SDRC Inc. (Mr. Bollen owned.) Mr. Bollen walked off with all the EB5 files (state records) when he resigned his position at Northern State University Dec. 21, 2009, without requesting permission to do so. This is in direct violation of the BOR Records Retention Manual.

(Richard Engels Ex F. Portion of Manual Ex. At ¶10)

"...all of which means that, under REG-23 (retention/destruction of official documents), whoever runs the NSU paper shredder would have gotten a memo on or about November 27, 2013, telling them hold off on their normal shredding of four-year-old records on campus that might relate to the Governor's Office of Economic Development (GOED.)"

Mr. Bollen and Mr James Park from Hanul Law Corporation hired Darley International for their extensive rolodex of clients in Asia, signing (by Hanul) a contract with Darley International in early October, 2007. Mr. Bollen and Mr. Park saw the potential for millions of dollars, and now with Darley's rolodex, brushed off Darley which lead to a lawsuit filed in the Federal District Court in California. Mr. Bollen decided to answer charges himself, rather than let South Dakota state lawyers (including the South Dakota Attorney General Larry Long) know about the suit. This lead to state lawyers and Board of Regents to claim state sovereignty to attempt to escape being ordered into arbitration.

Mr. Bollen incorporated 23 separate entities wholly within his control to hand out funds (act as un-licensed loan officer.) he channeled investments into these various entities of which he is the sole agent and owner.

> Oct. 18, 2011: Various Chinese nationals filed suit against SDRC Inc. in U.S. District Court accusing Mr. Bollen of investing their money in the failing NBP project without their consent or approval.
>
> July 19, 2013: The Northern Beef Packers (NBP), one of SDRC Inc. EB5 projects, files for Chapter 11 bankruptcy, after being run solely on EB5 investments and subsequently having to involve themselves with questionable (off-shore) Cayman Islands lending firms. Mr. Bollen had been taking-in investor monies knowing full well that NBP was a failed project. Where is the money? Where are the Visas?
> Sept. 19, 2013: Mr. Bollen was mailed a certified letter from the GOED, which was formerly the State Dept. of Tourism and Economic Development, terminating the contract with SDRC Inc. and asking for all books, records, and reports, all balances of funds, and to take down all websites, effective immediately. (http://eb5news.com/ The rise and fall of South Dakota program)
> Sept. 29, 2013: South Dakota Governor **Dennis Daugaard** quietly cancels the state's contract with SDRC Inc. (Richard Engels Ex. Portion of Manual Ex F. At ¶11)
>
> As of Sept. 15, 2014 Joop Mr. Bollen has yet to answer any of the questions surrounding the operation of SDRC Inc, or any of the accusations and seeming improprieties of same. As well, even the Northern State University would like the return of the pilfered documents (Dec. of Richard Engels Ex. H, At ¶12)

**Respondent, MARION M. "MIKE" ROUNDS** is a private citizen, who resides in this Jurisdiction. Specifically, Petitioners are seeking the known data from The File:

> Governor from 2003 to 2011, during most of the EB5 Scandal. Mr. Rounds, during his years as Governor approved of the work and actively participated in working alongside Mr. Bollen in the EB5 recruitment arena, and had to have green-lighted the January 15, 2008 NO-BID contract that Mr. Bollen signed as Director of the SDIBI with SDRC, Inc., a company that Mr. Bollen owned and controlled. His Cabinet Secretary (2006-2010) of the Dept. of State Tourism and Development (now known as Governor's Office of Economic Development, or GOED), is/was the late Richard Benda, the person who signed the second, sweetened, NO-BID contract providing taxpayer funds to Joop Bollen's SDRC Inc. (Richard Engels Ex. Portion of Manual Ex. At ¶10)

Among the documents we are seeking include the Policy & Procedures regarding the authority and duties of cabinet secretaries regarding contgracts we know were in place.

In addition, Mr. Rounds' former employee, Mr. Benda went to work for SDRC Inc. upon leaving public office under Gov. Rounds in 2010.
Mr. Rounds has since been anything but forthcoming regarding his relationship with Mr. Bollen.

**Witness, Harvey C. Jewett IV** is a private citizen, who resides in this Jurisdiction.

Specifically, Petitioners are seeking the known data from The File:

Mr. Jewett of Aberdeen, South Dakota was President of the state Board of Regents during the time the EB5 fraud was being perpetuated. He is currently president and chief operating officer of The Rivett Group, L.L.C.; and formerly a Partner with the law firm of Siegel, Barnett, and Schutz. (Aberdeen law firm which represented Mr. Bollen and his private firm SDRC Inc.) He also serves as chair of the Audit Committee of St. John's University and College of St. Benedict. He now operates Jewett Law Office in Aberdeen, SD.
Mr. Jewett was first appointed to the Board of Regents in 1997 by South Dakota Governor William Janklow, and reappointed by Gov. Rounds in 2005. Mr. Jewett continues to serve on the state Board of Regents with his term expiring in 2017. Mr. Bollen was employed as Director of the South Dakota International Business Institute (SDIBI,) supervised by the state Board of Regents, under President Harvey Jewett. Mr. Jewett works in the same law firm of Siegel, Barnett, and Schutz as Mr. Jeff Sveen who is heavily involved in dealings with, and work for, SDRC Inc. and the EB5 scandal.
"What I know about EB-5 is what has been in the papers," Jewett said recently. Jewett said that, like everyone else, he's curious to know what happened with the missing funds linked to the EB-5 program, adding that he believes the program is being demonized unjustly, though he could see there being a "bad apple" among the program's handlers." (Bob Mercer, reporting for the Aberdeen News.

**Respondent, Jeffrey T. Sveen** is a private citizen, who resides in this Jurisdiction. Specifically,

Petitioners are seeking the known data from The File:

Mr. Sveen is a partner at Siegel, Barnett and Schutz. Mr. Sveen was very involved in the EB5 financing failures for the Northern Beef Packers. Mr. Sveen also represented Mr. **Bollen** and SDRC Inc. throughout the EB5 scandal and continues to represent Mr. Bollen today.

Mr. Sveen admitted that SDRC Inc. operated like a bank, handing out loans in the EB5 debacle.

In a May 11, 2011 letter pertaining to litigation in California, Mr. Sveen says that SDRC Inc., like a bank, lends money:

"SDIBI is primarily involved in export promotions and facilitating direct investment for the State of South Dakota. It involves many components, including seminars and workshops, export finance, international trade resources, assisting companies with the South Dakota Foreign Trade Zone, Trade Lead Generators, and South Dakota Exporter's Directory.... It promotes economic development in South Dakota. EB-5 is just one component of the foreign direct investment activities offered by SDIBI. Under that EB-5 component, only equity projects are promoted. In contrast, SDRC, Inc. is completely different in its functions. It is not a facilitator in any equity programs. SDRC, Inc. does not promote economic development, but simply obtains funding through EB-5 and functions similar to a bank by lending those same funds to projects in South Dakota" [Jeffrey T. Sveen, letter to Jennifer S. Elkayam, 2011.05.11]. (Dec. Richard Engels Ex. E & I).

In addition, it is known that Aberdeen lawyer Jeff Sveen played at least five roles in matters, helping amend the incorporation of SDRC in 2009, defending SDRC in court, traveling with Mr. Bollen to China in search of EB-5 investors for the Dakota Provisions turkey processing operation in Huron for which Mr. Sveen serves as a top executive for two of the companies and filing paperwork for another private corporation started by Mr. Bollen, and lastly for now, he also represents him personally too. So far the identities of the lawyers involved in drafting the state contract with SDRC aren't publicly known."

Mr Sveen is also involved in a lawsuit: *Hutterville Hutterian Brethren, et al v. Jeffrey Sveen, Rodrick Tobin, and Harvey Jewett* in a RICO conspiracy action which argues Sveen, Tobin, and Jewett caused injury to the Hutterian Brethren though a pattern or racketeering and the law firm of Seigel, Barnett and Schutz, LLP, operated their law firm as a racketeering enterprise, and engaged in predicate acts of mail fraud, wire fraud, bank fraud, interstate transportation of stolen goods, document tampering and obstruction.

**Respondent, Robert (Tad) Perry** is a private citizen, who resides in this Jurisdiction.

Specifically, Petitioners are seeking the known data from The File:

> Mr. Perry is a former State Representative for District 24 (2011-2013). Mr. Perry was CEO of the South Dakota Public University system, and former Exec. Dir. of the state Board of Regents (1994 - 2009)
> Mr. Perry was Executive Director of the state Board of Regents during the relevant times when the first lawsuits were being filed against SDIBI by Darley Associates.
> ["Board of Regents Executive Director Tad Perry said in his declaration signed under penalty of perjury.]
> "Were a court to permit a suit against the SDIBI in its own name and a money judgment were to be entered against the SDIBI, such judgment would be paid out of the funds of the state of South Dakota." (Dec. Richard Engels Ex. J, at ¶14).
>
> Mr. Perry, who was executive director of the South Dakota Board of Regents at the time of the SDIBI/SDRC Inc. agreement transaction, said he would have "probably undone" the contract if he knew about it.
> "In their capacity as employees of the regents, signing a contract with a company that they owned would not be something that would be appropriate," Perry said. "But you'd have to know that. On the surface, if he wasn't a signatory for his own company, how did we know that was his company?" SDRC, Inc., is a corporation established in the South Dakota Secretary of State's office, listing Joop Bollen as the President, so the fact that SDRC is Joop Bollen's company, is a public record and was at that time.
>
> Further, "…former Board of Regents Executive Director Tad Perry, and Governor Dennis Daugaard (among others) knew about this (Darley) lawsuit, and concealed the potential liability from state legislators, and have since withheld the details from the press and the people of South Dakota.
>
> Bollen's immediate superiors, Northern State University President James Smith and then-Board of Regents director Tad Perry, say they had no idea Bollen owned the company to which he outsourced the functions of his state office. (Dec. Richard Engels Ex. I, at ¶8).

**Witness Jack R. Warner** is the Executive Director of the Board of Regents who resides in this Jurisdiction.

Specifically, Petitioners are seeking the known data from The File:

> Dr. Jack Warner is a resident of Fort Pierre, South Dakota, and current CEO/Executive Director of the state Board of Regents. Dr. Warner, in his capacity with the Board of Regents is responsible to the citizens of South Dakota for follow-through on the machinations and/or on-going failures of the EB5 Program during Board of Regents employment of Mr. Bollen. Dr. Warner has failed to uphold the by-laws of the Board of Regents in assuring the state of South Dakota recovers the property and money due the taxpayers of South Dakota as a result of Joop Bollen's violation of the Fraud policy of the Board of Regents.
> Dr. Warner is also responsible for examining the malfeasance and subsequent failure of the state EB5 Program run by Mr. Bollen (while a Board of Regents employee), causing a multi-million dollar arbitration with Darley International LLC., and a federal lawsuit concerning alleged fraud perpetrated upon foreign investors in the failed Northern Beef Packers/EB5 program.
> Dr. Warner, along with other respondents, knew the substance of these federal and state lawsuits, concealed the potential liability from state legislators, and has ever since, withheld the details from the press and the people of South Dakota.
> Dr. Warner is responsible, in his capacity as Exec. Dir. of the Board of Regents, for calling for investigation into Mr. Bollen's filing an opposition brief, without proper authority/South Dakota Attorney General's knowledge, in Federal Court in August of 2008, in answer to the Darley International, LLC lawsuit, in direct violation of South Dakota state law.
> Dr. Warner is responsible for instigating investigation into Mr. Bollen utilizing his position as Director of public, non-profit entity (SDIBI,) to illegally transfer all EB5 duties to private, for-profit South Dakota SDRC Inc., clearly breaking Board of Regents by-laws.
> Dr. Warner had direct knowledge of the Board of Regents March 2009 motion to vacate, and invoke state sovereignty (11th amendment), in the Darley International LLC arbitration case.
> Dr. Warner had a duty to disclose potential liability to state legislators when each of the above matters became known.

**Witness, John H. Meyer** is a campus-based attorney for Northern State University, who resides

in this Jurisdiction. Specifically, Petitioners are seeking the known data from The File:

> Mr. John Meyer is an attorney, and a Law Professor, for Northern State University (NSU) in the city of Aberdeen, SD. In Mr. Meyer's capacity as

legal counsel for NSU, he has direct knowledge of several aspects of the NSU/SDIBI EB5 administration and it's illegalities under Mr. Bollen.
To wit:
On January 22 or 23, 2009 Mr. Meyer was contacted directly by Mr. Bollen with questions pertaining to the California arbitration lawsuit with Darley International LLC., and Mr. Meyer requested all documentation from Mr. Bollen.
On January 27, 2009 Mr. Meyer reviewed documentation from Mr. Bollen pertaining to said arbitration, and that same day, January 27, 2009, Mr. Meyer contacted Board of Regents counsel James Shekleton with the information regarding the SDIBI/Darley lawsuit. Mr. Shekleton then informed Board of Regents Executive Dir. Tad Perry about the lawsuit. (Dec. Richard Engels Ex. K, at ¶15).

**Witness, Dr. James Smith** is the current President of Northern State University, who resides in this Jurisdiction. Specifically, Petitioners are seeking the known data from The File:

> Dr. Smith is a resident of Aberdeen, South Dakota and serves as current President of Northern State University.
> Dr. Smith knew the substance of the federal and state lawsuits concerning SDIBI, SDRC, Inc., and the EB5 program administered by Mr. Bollen, withheld the potential liability from state legislators, and has, ever since, withheld the details from the press and the people of South Dakota.
> Dr. Smith was responsible, in his capacity as President of NSU, for the actions of NSU/the Board of Regents employee Mr. Bollen up until Mr. Bollen's resignation on December 21, 2009.
> Dr. Smith has direct knowledge of pertinent legal dealings of Mr. Bollen and SDIBI litigation, from direct counsel with NSU attorney John Meyer, or Board of Regents counsel James Shekleton.
> Dr. Smith, in a letter of public record, dated January 6, 2014, stated that Mr. Bollen, "…took virtually all records in his office relating to his EB-5 activities and he requested no permission of NSU to do so,". This statement was in a response to a records request made by a citizen earlier this year. http://rapidcityjournal.com/news/local/chinese-investors-in-failed-s-d-beef-plant-may-be/article_8f60a90e-3e48-5c67-85bf-a7eeeca9e94e.html

**Witness, James F. Shekleton** is the General Counsel for the Board of Regents, who resides in this Jurisdiction. Specifically, Petitioners are seeking the known data from The File:

> Mr. Shekleton is general counsel in Pierre, SD for the state Board of Regents. He is the attorney who, along with then South Dakota Attorney General Larry Long and current South Dakota Attorney General Marty Jackley, retained James Lynch to represent the Board of Regents in litigation against Darley International in the state of California.
> Mr. Shekleton was first informed of the Darley International LLC. lawsuit against SDIBI/BOR on January 27, 2009 by NSU counsel John Meyer.
>
> On April 13, 2009 Mr. Shekleton had Mr. Bollen file a declaration with the Central District Court in California stating that Mr. Bollen was not licensed to practice law, and to vacate the order for arbitration with Darley International LLC. In the state of California.

**Witness, The Honorable Dennis Daugaard** is the current Governor of the State of South Dakota (South Dakota Attorney General Marty Jackley will be served with this Petition), who resides in this Jurisdiction. Specifically, Petitioners are seeking the known data from The File:

> Mr. Daugaard is the current Republican Governor of the State of South Dakota (2011-2015), and served as Lieutenant Gov. under Mike Rounds from 2003-2011.
> Gov. Daugaard was in office when EB5 project Northern Beef Packers filed for bankruptcy on July 22, 2013.
> Gov. Daugaard quietly canceled the state's contract with SDRC Inc. on Sept. 19, 2013 "for cause immediately." (Dec. Richard Engels Ex. K, at ¶11)
> On Oct. 20, 2013 Richard Benda, employee of SDRC, Inc. and former Secretary of State Tourism and Development under Gov Mike Rounds, dies of a gunshot wound near the town of Lake Andes, SD.
> Gov. Daugaard announced a state and federal investigation of the Governor's Office of Economic Development (affiliated with SDRC Inc.) on October 30, 2013.
> Gov. Daugaard stated that he "was generally aware of the EB-5 program as lieutenant governor, to the same degree that any interested observer might have been. I don't remember ever talking with Governor Rounds or any of the Rounds-era TSD secretaries about EB-5 while I was lieutenant governor. I have not discussed the program with Governor Rounds or any of those TSD secretaries since I took office in 2011." (Feb 20, 2014 – Capitol Journal.com )

Gov. Daugaard's Attorney General Marty Jackley has yet to release the details of the investigation into the death of former SDRC Inc. employee Richard Benda (Benda was previously the Sec of State Tourism and Development under Gov Mike Rounds.)

South Dakota Republican Senator Larry Tidemann, the chairman of the Government Operations and Audit Committee, has requested written but unsworn responses from (both Mr. Rounds and) Gov. Daugaard, but apparently has not subpoena'd any witnesses or any documents. He knew about the Darley Lawsuit and its potential liability to State tax payers, and buried in the state Audit report in 2010 and 2011 and deleted any reference in subsequent years audit reports, even though the arbitration is ongoing.

They provided no details in the audit report of how this lawsuit arose.

The current administration under Gov. Daugaard (and the Commissioner of Economic Development Pat Costello) appear to have distanced themselves considerably from the EB-5 program in South Dakota. *"Earlier this year, I became aware of alleged misconduct, prior to my administration, at the economic development office," Daugaard said in a statement. "I asked the state attorney general to investigate and provided all relevant materials to him. There has also been a federal investigation."*

## IV. SUBJECT MATTER OF THE EXPECTED ACTION AND THE PETITIONER'S INTEREST

14. The Petitioners have a significant interest in The File as each is either:

   a. A person affected by the actions and inactions of the Respondents and the data contained in each of their "Files";

   b. A County Commission member with obligations inherently affected by data in The File;

   c. A citizen taxpayer, affected by data in The File, among other interests we will articulate in the pending complaint.

## V. MEMORANDUM OF LAW

15. Notwithstanding the plain language of Federal Rule 27, as well as the case law applying it, a few courts have nevertheless expanded the scope of Rule 27 discovery. See, e.g., *In re Alfa Industries, Inc.*, 159 F.R.D. 456 (S.D.N.Y. 1995) (focusing on Rule 27 language "prevent a failure or delay of justice," the court permitted presuit factual discovery because petitioner showed that, absent such information, suit would be delayed, although no evidence or testimony would be lost); *Lubrin v. Hess Oil Virgin Islands Corp.*, 109 F.R.D. 403 (D. Virgin Islands 1986) (site inspection and deposition permitted because court believed the Federal Rules of Civil Procedure do not preclude separate equitable actions for the purpose of discovery"); *Reints v. Sheppard*, 90 F.R.D. 346 (M.D. Pa. 1981) (although denying plaintiff's Rule 27 petition requesting pre-complaint discovery in order to file a more detailed complaint, the court specifically stated it "would be willing to grant such a request in a situation where plaintiff truly did not have knowledge of sufficient facts to plead his case").

## VI. ORAL ARGUMENT

16. Petitioner hereby makes a request for Oral Argument to be had 21 days after service of the Respondents, or as soon thereafter as practicable.

## VII. CONCLUSION

17. Within this State there is a ground swelling of a very public outcry to get this addressed, for the public good, Petitioner herein seeks to effect a review by this Court of its claims.

- 16 -

## VIII. PRAYER FOR RELIEF

WHEREFORE, PETITIONERS respectfully ask this Court to enter an Order directing the Respondents to preserve *all* of The File and or, surrender a copy of The File to this Court, to prevent a failure of Justice.

Dated: September 22, 2014

*/s/ Richard A Engels*

Verified Petition
Richard Engels
SBSD #2429
46430 S Highway 38
Hartford, SD 57033
605-212-1828
Rl_engels@msn.com

Pre Complaint Petition to Preserve